IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL SHAWN NEWSOM, | | |
| | Petitioner, | No. CIV S-04-2134 GEB DAD P |
| vs. | | |
| D. L. RUNNELS, Warden, et al., | | |
| | Respondents. | FINDINGS & RECOMMENDATIONS |
| _____/ | | |

       Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction entered against him on May 22, 2001 in the Shasta County Superior Court on charges of possession of methamphetamine, maintaining a place for the sale or use of controlled substances, and possession of ammunition upon which he was sentenced to twenty-five years to life in state prison.  He seeks relief on the grounds that the trial court erroneously and prejudicially interfered with the function of the jury in violation of his right to trial by an unbiased, impartial jury.  Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Daniel Shawn Newsom of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), maintaining a place for selling or using methamphetamine (Health & Saf. Code, § 11366) and a convicted felon in possession of ammunition (Pen. Code, § 12316, subd. (b) (1)). The jury acquitted defendant of utilizing a fortified house to suppress law enforcement entry. (Health & Saf. Code, § 11366.6.) In bifurcated proceedings, the court found three strike priors (Pen. Code, § 1170.12) to be true.

* * *

On December 31, 2000, law enforcement officers executed a search warrant at defendant's trailer located in a trailer park. Receiving no response to their knocks and announcement of their presence, the officers entered a patio area and again knocked on the main door of the trailer. After several attempts to breach the door which was reinforced with a metal bar, the officers finally entered and found defendant with two associates. Officers found a peep hole in the door and a baby monitor and speaker in defendant's bedroom which allowed him to hear noise at the front door.

A drug detector dog alerted to the following four areas in defendant's trailer: a dresser drawer on the floor of the only bedroom in the trailer where officers found a plastic baggie with 37.71 grams of a white powdery substance which did <u>not</u> contain methamphetamine and a driver's license which belonged to defendant; underneath the bed where officers found a nylon bag containing three pieces of plastic wrap, each with white powder residue, a Q-tip, tobacco, and a film canister with pieces of plastic containing .64 grams of methamphetamine and cotton; a dresser drawer at the head of the bed in the bedroom where officers found approximately 80 hypodermic syringes; and a bathroom cabinet below the sink where officers found a bent metal spoon with .64 grams of methamphetamine and a piece of cotton.

In a desk in the living room, officers found an unopened letter, a jail visitor form, and a social security card indicating defendant resided at the trailer. Marijuana and a flare gun were also found in the living room. A 12-gauge shotgun cartridge was found in a cabinet under the kitchen sink. No indicia was found that showed anyone else lived in the trailer.

/////

---

[1] The following summary is drawn from the July 30, 3002 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), filed as Exhibit 5 to the Petition, at pgs. 1-4.

> Defendant was interviewed and admitted selling $100 worth of methamphetamine per day from his trailer. He knew that he was a convicted felon in possession of a flare gun and shotgun cartridge. Defendant explained the plastic packaging materials found in the living room desk were for packaging methamphetamine for sale. Defendant had numerous syringes because he used one only once. He denied selling them. Defendant explained that his door was reinforced because he had "'girl problems.'" A woman owed defendant money and he had been "going back and forth" with another woman. He had punctured the tires of the car belonging to one of the women. He also admitted that he reinforced the door in part to obstruct law enforcement. Defendant thought that the white powdery substance found in the baggie in the dresser drawer on the floor contained methamphetamine based on the smell and taste. He explained, however, that it was not high quality and basically sugar based on the number of complaints he had received and his own use. He denied manufacturing methamphetamine.
>
> On October 29, 2000, defendant reported a burglary at his trailer but an officer who responded was unable to confirm that any property had been taken. The suspects had gained entry by using a pry bar on the door. The officer did not recall seeing a metal bar on the door. Defendant's mother believed that defendant had installed the metal bar on the door by October 31, 2000.
>
> The parties stipulated that defendant had been previously convicted of a felony.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d

3

1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claim

Petitioner's sole claim is that the trial court's handling of his trial invaded the province of the jury and adversely affected the structural integrity of the trial, in violation of his right to trial by jury. He contends that this error is not subject to harmless error analysis but is

/////

prejudicial per se.  The California Court of Appeal described the background to this claim as follows:

> Defendant . . . contends that the trial court erroneously and prejudicially interfered with the function of the jury.  Specifically, defendant complains that the trial court gave the jury suggestions about how to conduct deliberations and highlighted portions of the instructions given.  We conclude that defendant has waived the issue by failing to object.  In any event, even assuming the trial court erred, defendant can show no prejudice.
>
> Background
>
> At the beginning of trial, the court had the bailiff hand out a notebook to each juror which is divided by tabs with the following headings:
>
> "TAB 1 Answers to common juror questions Courtroom personnel
>
> "TAB 2 Judge's preliminary instructions of law
>
> "TAB 3 Suggestions for Jury Deliberation ('Getting Started')
>
> "TAB 4 Judge's final instructions of law (to be distributed to you at the close of the presentation of evidence)
>
> "TAB 5 Blank paper for note-taking Courtroom Diagram"
>
> The judge left the bench and stood in the well to explain the notebook to the jurors.  With respect to Tab 3, Suggestions for Jury Deliberation, the judge explained that "lots of times jurors have no prior experience being a juror, so I have given some suggestions about what happens and how do we do this process and how do we get started" and noted that the jurors would have a chance later on to read it.  The suggestions which cover two pages are set forth in the margin below.[2]

---

[2] "SUGGESTIONS FOR JURY DELIBERATION

"**Jury deliberation is extremely important**. Each of you should participate in the decision-making process and should feel that the experience was worthwhile.  With this in mind, jurors should make every effort to be courteous and considerate of each other.  Rude or discourteous behavior should not occur.  You may wish to also consider the following: [¶] 1.  Do not disparage someone else's views.  We all perceive the world differently and each juror should be allowed to voice their own views without fear of ridicule or embarrassment.  You should try to resolve disagreements in an atmosphere that encourages openness and candor.  [¶] 2.  Give each juror the opportunity to speak.  Some jurors are more open and comfortable about sharing their views.  It is essential that each juror be willing to discuss their views with the others.  If a juror is unwilling or unable to discuss his or her views with the other jurors, you must let me

5

know immediately. Everyone should be able to go home with the feeling that they had the opportunity to share their views and opinions fully and completely. [¶] 3. Listen carefully when another juror is speaking. Try not to be looking at the instructions or evidence when someone else is speaking. [¶] 4. Remember, you are not attorneys for one of the parties in the case. You are to view the evidence and the law as twelve impartial judges of the facts. [¶] 5. <u>Introductions</u>. Since you don't know each other very well (if at all), you should go around the room and have each juror introduce themselves, their occupation, ages of their children, prior jury experience, etc. [¶] 6. <u>Selecting the foreperson</u>. After each juror has been introduced, you may wish to select the foreperson. This can be by private ballot with the person receiving the most votes being selected or any other fair selection process. Do not rush to pick the foreperson! I have talked with jurors who later said that they wish they would have spent more time deciding who would be the foreperson. The duties of the foreperson are simple yet important. It is he or she who acts as the moderator for the discussion, making sure everyone gets an opportunity to speak. The foreperson also is given the responsibility of signing and dating the verdict(s). The foreperson is not required to announce the verdict in open court; I'll do that. The foreperson should be someone who is a good listener but also able to take charge and keep the deliberations moving forward fairly and equitably. [¶] 7. <u>List issues for discussion</u>. Have each juror, if they wish, state what they believe are the issues that they would like to fully discuss. Someone may wish to write down the issues, perhaps on the 'chalkboard.' It may also be helpful to list the elements for each offense and whether each element has been proven. [¶] 8. <u>Discussion</u>. The discussion should be 'free and open' with each juror being given the opportunity to do so. If however the discussion gets bogged down, the foreperson may wish to start a list of who wishes to speak and then once that juror has spoken, he or she moves to the bottom of the list if the juror has more to say. [¶] 9. <u>Instructions</u>. Each juror has a complete set of the court's instructions and may choose to read them again. Each juror should be prepared to discuss the instructions with the other jurors. If after discussing an instruction, the jury needs my assistance with regard to understanding a legal issue or instruction, write the question down and contact the bailiff. I will then work with the attorneys and try and answer your question. This may take time so please be patient and continue your deliberations. [¶] 10. <u>Re-reading portions of testimony</u>. As I indicated to you in court, if you wish to have the court reporter brought into the jury room to read back portions of testimony of witnesses, please write the request and contact the bailiff. It will take some time (15 to 30 minutes) to contact the attorneys and arrange to have the court reporter brought over. Try and be as specific as possible with the request. If during the reading of the portions requested, the foreperson wishes to halt the process and engage in discussions, the court reporter must first be excused. [¶] 11. <u>Juror's Questions</u>. The bailiff cannot give you advice nor answer any questions you may have. Please write all questions, clearly and legibly, and contact the bailiff. He or she will then bring the note to my attention and I will contact the attorneys and formulate an answer. They may take time; please continue your deliberations while you await an answer. [¶] 12. <u>Voting</u>. You may (but are not required) to use secret ballots. However, once you advise the bailiff that you have reached a verdict, or that you are unable to reach a verdict, you will be brought back to the courtroom. At that time, I will ask each one of you if the verdict expresses your vote. That process is known as 'polling the jury.' [¶] 13. **REMEMBER: during any break or recess, no matter for what reason, all deliberations must stop. Do not discuss the case with any other juror (and never with anyone other than a juror) unless all twelve jurors are present in the jury room. This is a very strict rule that must be enforced at all times. You are not permitted to take your notebooks (or any portion thereof) with you outside of the jury deliberation room."** (Original italics, bolding, and underscoring.)

6

In discussing jury instructions, the trial court commented to counsel that it had "longstanding difficulty with the way the CALJIC reads and the format on which CALJIC is contained" and intended to give the jury simplified CALJIC instructions with certain words highlighted or bolded for the ease of counsel and for the jury's convenience.  Only the prosecutor objected based on "the rule that no one part of the instructions should be emphasized over the others."  The court noted the prosecutor's objection.

After the presentation of evidence but before giving the jury the final instructions, the judge left the bench and stepped into the well, instructed the jurors to open their notebooks and had them read the pages under Tab 1, answers to common juror questions and descriptions of court personnel.  Thereafter, the judge passed out the final instructions, instructed the jurors to place the same behind Tab 4, and had the jurors read along as the judge read the instructions.  At one point the judge interjected, "You will note that some of the words have been bolded for you.  That is not to draw necessarily emphasis to them; it's simply for sake of ease in trying to find any particular areas of instructions that you may wish to review, and it's also to assist the attorneys when they make their argument to you that they can easily turn to a particular instruction, so don't infer from my bolding a particular word that I am somehow wanting you to draw more emphasis to that than any other part of an instruction."

The bolded words included a usable amount, possession, actual or constructive, knowingly, criminal intent, general and specific, direct and circumstantial evidence, the elements of the offenses and the count numbers, expert, hypothetical question, proof beyond a reasonable doubt, witnesses, "the absolute constitutional right not to testify," just and lawful verdict, and "you must accept and follow the law contained in my instructions to you regardless of whether you agree with the law."

After arguments by counsel, the judge had the jurors turn to Tab 4 and read the concluding instructions.  Prior to reading the concluding instructions, the judge commented that once the jurors reached the deliberation room, they "may wish to read the materials" behind Tab 3.  After reading the concluding instructions, the judge commented,  "The first thing you should do is – when you are in the jury deliberation room is to review the materials behind [T]ab three."  After the bailiff was sworn to take charge of the jury, a juror asked how to proceed, "If we do have a question, should we present it now to the bailiff or wait until we are in the jury deliberation room?"  The court responded, "At this stage it would probably be better if you wait until you go into the jury deliberation room.  You might want to read the Suggestions for Getting Started, [T]ab three.  You may discuss your question with the other jurors.  If, after discussing the question with the other jurors, you still want to direct the request to the court, feel

> free to do so. [¶] The first thing you will probably do – you don't have to do this. You have great discretion when you are in the jury deliberation room. I am not peeking or listening in. Just remember the rules. I just think if you read the suggestions I said to you, you might feel a little more comfortable about what to do."

(Opinion at 10-16.)

In the traverse, petitioner further elaborates on the claim contained in the instant petition. He explains that his claim

> is not a traditional "jury instruction" issue. Rather, petitioner's claim is that the Judge tampered with the sacred province of the jury deliberation process not so much by giving or failing to give an individual instruction, or even his charge to the jury as a whole, but instead through the manner in which he structured and controlled the jury deliberation process from the start of the trial through the end of deliberations.
>
> Petitioner asserts that the Judge's self-created jury binder, which contained his instructions, note paper for the jurors, and his 'suggestions' for jury deliberation resulted in a structural defect in the trial proceeding.

(Traverse at 3-4.) Petitioner complains, "the Judge told the jurors everything they should do, from how to pick a foreperson, to how to vote, to how discussions should be undertaken, clear down to an order of discussion in the jury room." (Pet. at 19.)

Petitioner argues that the "structural defect" resulting from the judge's actions requires reversal of his conviction without a showing of prejudice. However, he also states that

> if this court believes the issue was one of "jury instruction," then the principle of these cases (involving jury instruction error) have been more than met. Petitioner's trial process was so infected by the Trial Judge's conduct that one cannot say the trial was fundamentally fair. Petitioner's right to due process was thereby violated and reversal is appropriate.

(Traverse at 4.)

The state appellate court rejected petitioner's arguments, finding that any error by the trial court was harmless. The state appellate court reasoned as follows:

/////

8

Standard of Review

The trial court has a duty to instruct the jury "generally concerning its basic functions, duties, and conduct." (Pen. Code, § 1122.)

"'"'It is well established in California that the correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.'"'" (People v. Estep (1996) 42 Cal. App.4th 733, 738-739.)

Analysis

We first consider whether defendant has waived the issue by failing to make a timely objection to the trial court's allegedly erroneous suggestions for deliberation and highlighting the final instructions. Defendant claims the prosecutor objected to the highlighting and, based on the court's ruling, any further objection on his part would have been useless or futile. (See People v. Anderson (2001) 25 Cal.4th 543, 587.) This does not explain defendant's failure to object to the allegedly erroneous suggestions for deliberation.

Generally, appellate review is waived absent a timely and specific objection. Penal Code section 1259 allows review of an instructional error, however, even absent an objection where "the substantial rights of the defendant" were affected thereby. (People v. Kainzrants (1996) 45 Cal. App.4th 1068, 1074.)

Defendant has failed to explain how his rights were affected other than generally claiming that the court unduly interfered with the jury's function, dictating rather than suggesting procedures and emphasizing instructions which in the aggregate were coercive, thereby denying defendant his rights to a fair trial by an unbiased and impartial jury and to due process under the state and federal constitutions. And further, defendant claims the court's instructions misinformed the jury regarding their right to nullify a verdict and threatened the integrity of the unanimous verdict by intimidating jurors and threatening judicial sanctions to remove a holdout juror if they should disagree with the majority.

Defendant cannot establish that his rights were affected by the court's suggestions for deliberation or highlighting words in the instructions. He does not claim that any rule of law was misstated or was wrong other than that with respect to jury nullification to which a jury has no right and defendant's rights to a jury trial are not affected by the removal of a juror who refuses to follow the law. (People v. Williams (2001) 25 Cal.4th 441, 449 ["The circumstance that, as a practical matter, the jury in a criminal case may have the ability to disregard the court's instructions in the defendant's favor without recourse by the prosecution does not

> diminish the trial court's authority to discharge a juror who, the court learns, is unable or unwilling to follow the court's instructions"]; People v. Brown (2001) 91 Cal. App.4th 256, 271.) Defendant's claim that minority jurors were intimidated by the court's instructions is rejected as nothing more than speculation. The jury acquitted defendant of utilizing a fortified house to suppress law enforcement entry.  The jury requested the readback of Officer Bokavich's testimony and had a question about specific intent.  The record does not reflect any problems of a holdout juror. To the extent defendant challenges CALJIC No. 17.41.1 (jury misconduct), his claim is rejected for the reasons stated in People v. Engelman (2002) 28 Cal.4th 236.
>
> In any event, although the trial court changed some of the language of the CALJIC instructions, the instructions given state the relevant law and defendant does not contend otherwise.  "[T]he trial court is not obligated, necessarily, to repeat the words chosen by the CALJIC Committee, however helpful they may be.  Instead, the trial court's obligation is to state the law correctly." (People v. Runnion (1994) 30 Cal. App.4th 852, 858.)
>
> The court did highlight certain words in the instructions.  CALJIC No. 17.45 provides, "The instructions which I am now giving to you will be made available in written form if you so request for your deliberations.  They must not be defaced in any way. [¶] You will find that the instructions may be typed, printed or handwritten. Portions may have been added or deleted.  You must disregard any deleted part of an instruction and not speculate as to what it was or as to the reason for its deletion.  You are not to be concerned with the reasons for any modification. [¶] *Every part of the text of an instruction, whether, typed, printed or handwritten, is of equal importance.*  You are to be governed only by the instruction in its final wording."  (Italics added.)  The court explained that it had highlighted certain words to assist counsel and the jury.  By doing so, the court did not misstate the law and specifically instructed why certain words were highlighted.  Defendant shows no prejudice.  We reject his claim.

(Opinion at 16-19.)

Respondents argue that the state appellate court's conclusion that petitioner had waived this claim by failing to make a timely objection constitutes a procedural bar which precludes this court from addressing the merits of his claim of structural error.  Petitioner, on the other hand, contends that the state appellate court's ruling is ambiguous and did not clearly rest on adequate and independent state grounds.  Petitioner also argues that some of his "jury instruction highlighting issues" were preserved for review as a result of the prosecutor's

objection, that California's "contemporaneous objection rule" does not apply to a claim involving "judicial interference with the function of the jury," that he has demonstrated "cause" because his trial counsel's failure to object was the result of ineffective assistance, and that California Penal Code § 1259 specifically allows appellate review of an issue if, as here, "the substantial rights of the defendant were affected thereby." (Traverse at 5-7.)

State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). The state rule for these purposes is only "adequate" if it is "firmly established and regularly followed." Id. (quoting Ford v. Georgia, 498 U.S. 411, 424 (1991)). See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.") The state rule must also be "independent" in that it is not "interwoven with the federal law." Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). Even if the state rule is independent and adequate, the claims may be reviewed by the federal court if the petitioner can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 749-50.

A reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim where the default issue turns on difficult questions of state law. Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004). Under the circumstances presented here, this court finds that petitioner's claim can be resolved more easily by addressing it on the merits. Accordingly, this

court will assume that petitioner's claim is not procedurally defaulted.

### A. Structural Error

The United States Supreme Court has recognized that "some errors – known as structural errors – defy analysis by harmless-error standards because they affect the framework within which the trial proceeds." United States v. Soto, 519 F.3d 927, 930 (9th Cir. 2008) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 148-49 (2006)). Structural errors require automatic reversal of a conviction. Sullivan v. Louisiana, 508 U.S. 275, 278 (1993). "Only in rare cases has [the Supreme] Court held that an error is structural." Washington v. Recuenco, 548 U.S. 212, 218 (2006). Those "rare cases" include the following constitutional errors: complete denial of counsel, a biased trial judge, racial discrimination in selection of the grand jury, denial of self-representation at trial, denial of a public trial, and a defective reasonable-doubt instruction. Id. at 219 n.2.

Trial errors, on the other hand, involve "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991). Trial errors include, for example: unconstitutionally overbroad jury instructions at the sentencing stage of a capital case, jury instructions containing an erroneous conclusive presumption, jury instructions misstating an element of the offense, jury instructions containing an erroneous rebuttable presumption, denial of a defendant's right to be present at trial, improper comment on a defendant's silence at trial, and failure to instruct the jury on the presumption of innocence. Id. at 307. In general, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis." Neder v. United States, 527 U.S. 1, 8 (1999) (citations, internal quotation marks, and alterations omitted). "Most constitutional errors can be harmless." Id. (quoting Fulminante, 499 U.S. at 306).

In this case, the only possible structural error implicated by petitioner's claim is that the trial judge's overall handling of petitioner's trial reflected bias or impartiality. Indeed, petitioner describes his claim as "one of the judge contaminating the deliberations with his own ideas, thoughts, and structure, rather than allowing the free flow of ideas and independent thought by a jury that our founding fathers intended." (Pet. at 12.)[3] This case does not involve any of the other errors that have been found to be structural: complete denial of counsel, racial discrimination in selection of the grand jury, denial of self-representation at trial, denial of a public trial, or a defective reasonable-doubt instruction. Accordingly, this court will evaluate the record to determine whether the trial judge's actions constituted bias, resulting in structural error.

There are two ways in which a petitioner may establish that he has been denied his constitutional right to a fair hearing before an impartial tribunal. First, the proceedings and surrounding circumstances may demonstrate actual bias on the part of the adjudicator. See Taylor v. Hayes, 418 U.S. 488, 501-04 (1974). In other cases, the adjudicator's pecuniary or personal interest in the outcome of the proceedings may create an appearance of partiality that violates due process, even without any showing of actual bias. Gibson v. Berryhill, 411 U.S. 564, 578 (1973); see also Exxon Corp. v. Heinze, 32 F.3d 1399, 1403 (9th Cir. 1994) ("the Constitution is concerned not only with actual bias but also with 'the appearance of justice'"). There is no evidence here that the trial judge had a personal or pecuniary interest in the outcome of the proceedings. Accordingly, the court will analyze whether the circumstances of petitioner's trial demonstrate actual bias on the part of the judge.

A trial judge's participation in a trial oversteps the bounds of propriety and deprives the parties of a fair trial only when "the record discloses actual bias . . . or leaves the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." United States v. Mostella, 802

---

[3] This page citation is to the memorandum attached to the form first amended petition filed by counsel on behalf of petitioner.

13

F.2d 358, 361 (9th Cir. 1986) (citation and internal quotation marks omitted).  In attempting to make out a claim of unconstitutional bias, a plaintiff must "overcome a presumption of honesty and integrity" on the part of decision-makers.  Withrow v. Larkin, 421 U.S. 35, 47 (1975).  He must also show that the judge "has prejudged, or reasonably appears to have prejudged, an issue."  Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992) (quoting Partington v. Gedan, 880 F.2d 116, 135 (9th Cir. 1989) (Reinhardt, J. concurring and dissenting)).

"'A trial judge is more than a moderator or umpire.'  His responsibility is to preside in the manner and with the demeanor to provide a fair trial to all parties and his discretion in the performance of this duty and management is wide."  United States v. Larson, 507 F.2d 385, 389 (9th Cir. 1974) (quoting Robinson v. United States, 401 F.2d 248, 252 (9th Cir. 1968)).  The judge therefore may "participate in the examination of witnesses to clarify issues and call the jury's attention to important evidence."  United States v. Wilson, 16 F.3d 1027, 1031 (9th Cir. 1994).  "Even in cases where a judge's participation in a trial is 'extreme,' that participation generally does not warrant reversal if a later curative instruction is given."  United States v. Morgan, 376 F.3d 1002, 1008 (9th Cir. 2004).  See also United States v. Parker, 241 F.3d 1114, 1119 (9th Cir. 2001).  A trial judge "must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid even the appearance of advocacy or partiality."  Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 709 (9th Cir. 1989) (quoting United States v. Harris, 501 F.2d 1, 10 (9th Cir. 1974)), overruled on other grounds by Hunter v. Bryant, 502 U.S. 224 (1991).

To sustain a claim of judicial bias on direct appeal , "there must be an 'extremely high level of interference' by the trial judge that creates 'a pervasive climate of partiality and unfairness.'"  Duckett v. Godinez, 67 F.3d 734, 740 (9th Cir. 1995) (quoting United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir. 1982)).  "A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits."  Daye v.

Attorney General of State of N.Y., 712 F.2d 1566, 1572 (2nd Cir. 1983). On habeas review, the standard is even more stringent: relief is warranted only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." Duckett, 67 F.3d at 740. See also Lang v. Callahan, 788 F.2d 1416, 1417-18 (9th Cir. 1986) (trial judge's remarks referring to defendant as a brutal rapist and robber of white females did not reflect racial prejudice so as to violate defendant's right to an impartial tribunal).

This court has carefully reviewed the record and concludes that the trial judge's involvement in petitioner's trial did not reflect a bias in favor of the prosecution or otherwise render petitioner's trial fundamentally unfair. Although the trial judge attempted to control the structure of jury deliberations by his suggested guidelines, he did not influence the substance of those deliberations. For instance, as explained by the California Court of Appeal, the jury was specifically instructed not to place any importance on the bolded words in the instructions and was advised that every part of those instructions were of equal importance. The trial judge's guidelines were labeled "suggestions," and his statements to the jury made it clear that compliance with these "suggestions" was optional. The judge did not question any witnesses, express any hostility towards petitioner or any defense witness, or help the prosecutor present his case. The trial judge also told the jurors that they had "great discretion when you are in the jury deliberation room," and that he was not "peeking or listening in." (Opinion at 15.) The judge did not take over the role of decision maker, direct the jury how to vote, or otherwise usurp the jury's role. Cf. Duckett, 67 F.3d at 739-40 (no judicial misconduct where the state trial judge "took over" the questioning of another witness to the crime scene, including testing the witness's ability to gauge distances by dimming the lights in the courtroom, and "expressed clear frustration and hostility" to the defendant when he testified, encouraging the prosecution to "once in a while throw in an objection for the heck of it").

/////

1    Petitioner claims that the trial judge's structuring of the case involved "an error in
2 the framework of how the trial proceeds." (Pet. at 13.) He also claims that "it could reasonably
3 be argued the Judge's actions (perhaps without intending) were increasing the odds of conviction
4 by tampering with the normally private manner in which a jury conducts its business." (Id. at
5 15.) However, petitioner has failed to demonstrate that the procedures employed by the trial
6 judge were erroneous, prejudiced the jurors in favor of the prosecution, invaded the secrecy of
7 jury deliberations, or resulted in an unfair trial. Although the trial judge suggested a format for
8 conducting jury deliberations, he did not insist that the jurors follow the format and his
9 suggestions were not unfair or coercive.

10   Petitioner also complains that the trial judge "was blatantly attempting to warn the
11 jurors off any attempt to nullify," given that petitioner was facing twenty-five years to life for a
12 relatively minor criminal offense. (Id. at 20.) The concept of jury nullification "allows a jury to
13 acquit the defendant even when the government has proven its case beyond a reasonable doubt."
14 United States v. Powell, 955 F.2d 1206, 1212-13 (9th Cir. 1992). However, a criminal defendant
15 is not entitled to a jury nullification instruction. Id. at 1212-13. See also United States v.
16 Simpson, 460 F.2d 515, 519 (9th Cir. 1972). In California, a juror may be removed from service
17 if the juror becomes ill, dies, or is "unable to perform his or her duty." Cal. Penal Code § 1089.
18 A juror who refuses to follow the court's instructions is "unable to perform his duty" within the
19 meaning of § 1089. People v. Williams, 25 Cal.4th 441, 448 (2001). The Ninth Circuit Court of
20 Appeals has upheld the constitutionality of this state statute after determining that it "preserved
21 the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." See Miller
22 v. Stagner, 757 F.2d 988, 995 & n.3 (9th Cir. 1985).

23   The trial judge's instructions in this case were consistent with the above-described
24 California and federal law, do not reflect any judicial bias, and did not violate petitioner's right to
25 a jury trial. See Sparf v. United States, 156 U.S. 51, 102 (1895) ("We must hold firmly to the
26 doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the

law from the court, and apply that law to the facts as they find them to be from the evidence"); United States v. Amparo, 68 F.3d 1222, 1224 (9th Cir. 1995) ("However, while the jury is the arbiter of the facts, the judge is the arbiter of the law: 'the judge must be permitted to instruct the jury on the law and to insist that the jury follow his instructions.'") (citing United States v. Gaudin, 515 U.S. 506, 513 (1995)).

    Petitioner has failed to demonstrate that the trial judge's actions or his instructions evidenced bias or otherwise constituted "structural error."  There is no evidence that the judge's instructions projected to the jury an appearance that he was partial to any party or that he had prejudged any issue.  Although the judge proposed somewhat unusual suggestions for conducting jury deliberations, his involvement in petitioner's trial did not constitute the type of extreme conduct that would warrant reversal of petitioner's conviction.  In addition, petitioner has not cited any United States Supreme Court case finding structural error from the type of conduct engaged in by the trial judge in this case.  Accordingly, the decision of the California Court of Appeal rejecting petitioner's claim of structural error and analyzing the claim as one of instructional error, is not contrary to or an unreasonable application of federal law.  See Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004) (citing Brewer v. Hall, 378 F.3d 952, 955 (9th Cir. 2004)).  For all of these reasons, petitioner is not entitled to relief on his claim of structural error.

   B.  Jury Instruction Error

    The California Court of Appeal analyzed petitioner's claim as one of jury instruction error.  Petitioner argues that if his claim is so viewed by this court, he has demonstrated the requisite prejudice.  (Pet. at 19.)  This court disagrees.

    A challenge to jury instructions does not generally state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction cannot be merely "undesirable,

erroneous, or even universally condemned, but must violate some due process right guaranteed by the Fourteenth Amendment." Prantil v. State of California, 843 F.2d 314, 317 (9th Cir. 1987) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)) (internal quotes omitted).  To prevail on such a claim the petitioner must demonstrate that an erroneous instruction "so infected the entire trial that the resulting conviction violates due process." Prantil, 843 F.2d at 317 (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)).  See also Middleton v. McNeil, 541 U.S. 433, 437 (2004).  In making its determination, this court must evaluate the challenged jury instructions "in the context of the overall charge to the jury as a component of the entire trial process." Prantil, 843 F.2d at 317 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)).

An error in the giving of a jury instruction is a "trial error" as distinct from a "structural defect." Fulminante, 499 U.S. at 309-10; Drayden v. White, 232 F.3d 704, 709 (9th Cir. 2000).  A federal court may grant habeas relief based on trial error only when that error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  See also California v. Roy, 519 U.S. 2, 4-6 (1996) (applying harmless error standard to jury instructions that omit reference to an element of the crime); Rice v. Wood, 77 F.3d 1138, 1144 (1996) (Observing with respect to the erroneous instruction at issue in that case that "[t]he Supreme Court has nevertheless repeatedly held that giving such an instruction is only trial error, subject to harmless-error analysis.")  Under the harmless error analysis, the petitioner is entitled to habeas relief if the reviewing court is in "grave doubt" as to whether the jury instruction error had a substantial and injurious effect or influence on the jury's verdict. Polk v. Sandoval, 503 F.3d 903, 911 (9th Cir. 2007); Morris v. Woodford, 273 F. 3d 826, 833 (9th Cir. 2001); Coleman v. Calderon, 210 F.3d 1047, 1051 (9th Cir. 2000).

For the reasons described by the California Court of Appeal, petitioner has failed to demonstrate that the trial judge's instructions to the jury rendered petitioner's trial

fundamentally unfair.  There is no evidence that any of the instructions given were erroneous.  As the state appellate court noted, although the trial judge changed some of the language of the CALJIC pattern instructions, the instructions as given correctly stated the applicable law and petitioner did not contend otherwise.  (Opinion at 18.)  Certainly there has been no showing that the instructions, as a whole, "so infected the entire trial that the resulting conviction violates due process."  Middleton v. McNeil, 541 U.S. at 437.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 30, 2008.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
newsom2134.hc